UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DISCOVERORG HOLDINGS, LLC,

Plaintiff,

v.

WILLIAM KAPNER, DENNIS ARNDT, and TITANHOUSE, INC.,

Defendants.

No. 3:17-CV-06008 RBL

DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION UNDER FED. R. CIV. P. 12(b)(2) AND IMPROPER VENUE UNDER FED. R. CIV. P. 12(b)(3), OR IN THE ALTERNATIVE TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

NOTE ON MOTION CALENDAR:

January 19, 2018

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# Table of Contents

I.    INTRODUCTION ............................................................................................... 1

II.   STATEMENT OF FACTS ................................................................................. 1

    A.    Defendant William Kapner ..................................................................... 1

    B.    Defendant TitanHouse .............................................................................. 2

    C.    Defendant Dennis Arndt .......................................................................... 2

    D.    This Lawsuit .............................................................................................. 4

III.  AUTHORITY .................................................................................................... 5

    A.    This Court Does Not Have Personal Jurisdiction Over Defendants .................... 5

        1.    This Court Does Not Have General Jurisdiction Over Defendants ........... 6

        2.    This Court Does Not Have Specific Jurisdiction Over Defendants........... 9

            a.    Defendants Have Not Purposefully Availed Themselves of the Privilege of Conducting Activities in the Forum ................... 11

            b.    Plaintiff's Claims Do Not Arise Out of or Result from Defendants' Forum-Related Activities ........................................ 17

            c.    Exercise of Personal Jurisdiction Over Defendants Is Not Reasonable .............................................................................. 18

    B.    This District is Not an Appropriate Venue ......................................................... 19

    C.    Motion to Transfer ............................................................................................. 20

        1.    The location where the Employment Agreement was negotiated and executed. ....................................................................................... 21

        2.    The state most familiar with the governing law ...................................... 21

        3.    Plaintiff's choice of forum ....................................................................... 21

        4.    The respective parties' contacts with the forum ...................................... 22

        5.    The contacts relating to Plaintiff's cause of action in the forum ............. 22

        6.    The difference in cost of litigation ........................................................... 22

        7.    The availability of compulsory process of non-party witnesses .............. 23

        8.    The ease of access to sources of proof ..................................................... 23

        9.    Public policy considerations of the forums .............................................. 23

IV.   CONCLUSION .................................................................................................. 23

DEFENDANTS' MOTION TO DISMISS
(No. 3:17-06008 RBL) –(i)

137906799.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# I.    INTRODUCTION

This lawsuit was filed in the wrong court.  Defendants William Kapner, Dennis Arndt, and TitanHouse, Inc. thus move pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) to dismiss all claims asserted against them in this forum by Plaintiff DiscoverOrg Holdings, LLC.  Defendants move on three independent grounds:  (1) because this Court lacks personal jurisdiction over some or all of the Defendants (2) because venue is improper in this Court; and (3) in the alternative, because this case should be transferred pursuant to 28 U.S.C. § 1404(a).

There is no basis for personal jurisdiction over any of the three defendants.  William Kapner lives and works in Maryland, which is also where his company, TitanHouse, is based. Dennis Arndt lives and works in Virginia.  Kapner has never lived, worked, owned property or done business in Washington.  Likewise, his company TitanHouse has never done business, employed persons or owned property in Washington.   And while Arndt did work approximately 25, non-continuous days in Washington before DiscoverOrg fired him, his DiscoverOrg-drafted Restrictive Covenant Agreement ("RCA"), the contract at issue in this lawsuit, selects Virginia, not Washington as the forum for any dispute.  Defendants respectfully ask this Court to dismiss all claims against Defendants so that Plaintiff can bring this case in the appropriate forum. Alternatively, if this Court asserts personal jurisdiction against any Defendant, and determines that venue is correct in this forum, Defendants ask that this Court transfer venue to the Eastern District of Virginia at Alexandria.

## II.    STATEMENT OF FACTS

### A.    Defendant William Kapner

Defendant William Kapner has lived in Bethesda, Maryland for over 34 years. Declaration of William Kapner ("Kapner Decl.") ¶ 3.  He has never lived nor worked in Washington.  *Id*.  Kapner owns no property in Washington.  *Id*.  He has never held any

DEFENDANTS' MOTION TO DISMISS
(No. 3:17-06008 RBL) −1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Washington license or maintained any bank account or phone number in Washington. *Id*. He has only visited Washington three times in his life, each time for a short vacation. *Id*.

In January 2008, Kapner founded RainKing Software, Inc. ("RainKing"), a company that collected and compiled business information about technology buyers and the technologies that they use within various companies. *Id*. ¶ 4. RainKing was a Delaware corporation with its principal place of business in Bethesda. *Id*. Kapner served as the CEO of RainKing until he left the company in September 2015, when RainKing entered into a merger with RKSI HoldCo Inc. and RKSI MergerSub Inc. ("Spectrum"). *Id*. Kapner never worked for DiscoverOrg. *Id*.

**B.    Defendant TitanHouse**

In early 2016, Kapner formed TitanHouse. *Id*. ¶ 5. TitanHouse is incorporated in Delaware with its principal place of business in Bethesda. *Id*. TitanHouse has no contacts with Washington. *Id*. It is not registered to do business in Washington and does not employ people in Washington. *Id*. TitanHouse has no offices in Washington and it has not conducted any business in Washington. *Id*. TitanHouse is still in start-up mode and, thus, has done no business in any jurisdiction, let alone in Washington. *Id*.

**C.    Defendant Dennis Arndt**

Defendant Dennis Arndt has lived in Virginia since 2009. Declaration of Dennis Arndt ("Arndt Decl.") ¶ 3. He has lived on the East Coast his entire life. *Id*. He currently lives in Leesburg, Virginia, which is close to Bethesda. *Id*. He has never lived in Washington. *Id*. Arndt owns no property in Washington. *Id*. He has never held any Washington license or maintained any bank account or phone number in Washington. *Id*. Arndt's only connect to Washington is that he worked out of DiscoverOrg's Vancouver, Washington offices for approximately 25 days between August 25, and October 19, 2017. *Id*.

As with Kapner, all or nearly all of Arndt's contacts with Defendant exist by virtue of his work with Maryland-based RainKing, not DiscoverOrg. *Id*. ¶ 6. In February 2014, Arndt was hired by Kapner as RainKing's Chief Technology Officer ("CTO"). *Id*. ¶ 4. Arndt continued to

DEFENDANT'S MOTION TO DISMISS
(No. 3:17-06008 RBL) –2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    live in Virginia and work in Maryland. *Id*. In September 2015, when RainKing entered into a

2    merger with Spectrum, Arndt executed an Employment Agreement with RainKing, which was

3    negotiated and signed in RainKing's Maryland office. *Id*. Arndt's Employment Agreement

4    contained provisions regarding confidentiality, non-solicitation, and non-competition. *Id*. His

5    Employment Agreement also provided that any disputes or controversies arising in connection

6    with the agreement would be settled in arbitration in Montgomery County, Maryland, in

7    accordance with Maryland law. *Id*.

8          After the Spectrum merger, Arndt continued to live in Virginia and work for RainKing in

9    Maryland. *Id*. On August 25, 2017, RainKing was acquired by its competitor DiscoverOrg and

10    Arndt became the CTO for both RainKing and DiscoverOrg. *Id*. ¶ 5. DiscoverOrg is a Delaware

11    corporation with its principal place of business in Vancouver, Washington. Dkt. # 1.

12    DiscoverOrg still maintains its RainKing office in Bethesda. Arndt Decl. ¶ 5. After the merger,

13    Arndt continued to work in the Maryland office, but he also worked approximately 25 days from

14    DiscoverOrg's Vancouver, Washington location. *Id*. ¶ 6. Arndt denies misappropriating any

15    trade secrets, whether the information originated from RainKing or DiscoverOrg. *Id*. He

16    specifically denies having any knowledge regarding DiscoverOrg's trade secrets or confidential

17    information. *Id*. To the extent he even has knowledge of any confidential information or trade

18    secrets, that knowledge relates to RainKing, not DiscoverOrg. *Id*.

19          After DiscoverOrg acquired RainKing, Arndt signed the DiscoverOrg Restrictive

20    Covenant Agreement ("RCA"). *Id*. ¶ 5. The DiscoverOrg RCA designated Virginia as the

21    forum and governing law. *Id*. Arndt signed his RCA in RainKing's Maryland office. *Id*.

22          On October 19, 2017, DiscoverOrg terminated Arndt's employment. *Id*. ¶ 7. After his

23    termination, Arndt executed a Separation Agreement. *Id*.; Dkt. # 1, Ex. 2 at 22. The Separation

24    Agreement provides that the Agreement is governed by Washington law and selects Washington

25    is the forum for any action arising *from the Separation Agreement*. *Id*. Arndt received the

26    Separation Agreement in Washington, but reviewed it, negotiated its terms and signed it at his

DEFENDANT'S MOTION TO DISMISS
(No. 3:17-06008 RBL) –3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1  home in Virginia.  Arndt Decl. ¶ 7.  When he signed the Separation Agreement, Arndt did not

2  intend that disputes relating to his DiscoverOrg RCA would be litigated in Washington.  *Id.*  He

3  expected any such dispute to be litigated in Virginia, as the DiscoverOrg RCA provides.  *Id.*

4      On November 5, 2017,  Arndt started working as the CTO for TitanHouse in Bethesda.

5  *Id.* ¶ 8.  In November, 2017, Arndt engaged four computer engineers he knew from his time at

6  RainKing to work nights and weekends as part-time temporary contractors to set up various

7  third-party computer services for TitanHouse.  *Id.*  DiscoverOrg alleges that this breached the

8  non-solicitation provisions of Arndt's DiscoverOrg RCA and resulted in a misappropriation of

9  trade secrets.  Dkt. # 3.  For purposes of this motion, the salient fact is that those contractors live

10  and work in Maryland, not Washington.  Arndt Decl. ¶ 8.  Although these contractors were then

11  employed by DiscoverOrg, that was simply by virtue of the recent acquisition.  *Id.*  And none of

12  the work they did used or implicated any DiscoverOrg (or, for that matter, RainKing) technology,

13  trade secrets or confidential information.  *Id.*

14  **D.    This Lawsuit**

15      On December 5, 2017, Plaintiff filed this lawsuit against Defendants William Kapner,

16  Dennis Arndt, and TitanHouse, Inc. alleging misappropriation of trade secrets and, as to Arndt,

17  breach of his RCA and Separation Agreement.  Dkt. # 1 at 10-14.  TitanHouse and Kapner

18  received copies of the summons and complaint in Maryland; Arndt received copies of the

19  summons and complaint at his home in Virginia.  Arndt Decl. ¶ 2; Kapner Decl. ¶ 2.

20      The following day, Plaintiff filed a Motion for Temporary Restraining Order.  Dkt. # 3.

21  Defendants filed their opposition deny Plaintiff's allegations and challenging personal

22  jurisdiction and venue in this Court.  Dkt. # 11 at 9.  The Motion is fully briefed and oral

23  argument is set for January 2. Dkt. # 17.

24      Plaintiff claims that Arndt, Kapner, and TitanHouse misappropriated RainKing and

25  DiscoverOrg's trade secrets and confidential information for the benefit of TitanHouse and that

26  Arndt violated the non-compete and non-solicitation provisions contained in his RCA.  Dkt. # 1

DEFENDANT'S MOTION TO DISMISS
(No. 3:17-06008 RBL) –4

137906799.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    (Compl. ¶¶ 42-44).  The Complaint does not identify with particularity which specific trade

2    secrets were supposedly misappropriated, but any information that might reasonably be at issue

3    in this dispute originated from RainKing in Maryland, not from DiscoverOrg in Washington.

4    Arndt Decl. ¶ 6.  With respect to Arndt's Separation Agreement, Plaintiff's breach of contract

5    claim is entirely duplicative of the RCA claim, which mandates a Virginia forum and Virginia

6    law.  Dkt. # 1 (Compl. ¶¶ 46-47).  Plaintiff has asserted that duplicative claim in an attempt to

7    secure personal jurisdiction in this forum pursuant to the forum selection clause.  The real

8    contract at issue in this case is Arndt's RCA, which selects Virginia as the forum and law.

9    Because the contract at issue is the RCA, no personal jurisdiction can be had over Arndt.  Yet,

10   even if there were, there is clearly no basis for personal jurisdiction over TitanHouse and

11   Kapner, and thus, transfer is appropriate so that this case is not litigated in two separate forums.

## III.    AUTHORITY

### A.    This Court Does Not Have Personal Jurisdiction Over Defendants

14          Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a

15   complaint on the ground that the court lacks personal jurisdiction over the defendant.  Where no

16   applicable federal statute addresses the issue, a court's personal jurisdiction analysis begins with

17   the "long-arm" statute of the state in which the court sits. *Glencore Grain Rotterdam B.V. v.*

18   *Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1123 (9th Cir. 2002).  Washington's long-arm

19   statute extends the court's personal jurisdiction to the broadest reach that the United States

20   Constitution permits. *Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 269 (9th Cir.

21   1995).  Thus, because Washington's long-arm statue is coextensive with federal due process

22   requirements, the court need only analyze whether the exercise of jurisdiction would comport

23   with due process. *Glencore Grain,* 284 F.3d at 1123.  "The Due Process Clause protects an

24   individual's liberty interest in not being subject to binding judgments of a forum with which he

25   has established no meaningful 'contacts, ties or relations.'" *Burger King v. Rudzewicz*, 471 U.S.

26   462, 471–72, 105 S. Ct. 2174 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319,

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   66 S. Ct. 154 (1945)). Due process requires that individuals have "fair warning" that a particular

2   activity may subject them to jurisdiction in a foreign forum, allowing them to structure their

3   conduct with some minimum assurance as to whether it will render them liable to suit. *Id*. at 472.

4       Federal due process requires that nonresident defendants have sufficient minimum

5   contacts with the forum state such that the exercise of jurisdiction will not offend "traditional

6   notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. 310.  A court can exercise

7   its power over a non-resident defendant only if it has specific or general jurisdiction. *Id*.  General

8   jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection

9   unrelated to the underlying suit," whereas specific jurisdiction is based on a connection "between

10   the forum and the underlying controversy." *Walden v. Fiore*, 134 S. Ct. 1115, 1120 n.6 (2014).

11       Plaintiff has the burden of establishing personal jurisdiction, *Harris Rutsky & Co. Ins.*

12   *Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003), and the due process

13   requirements for personal jurisdiction "must be met as to *each* defendant over whom a . . . court

14   exercises jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco*

15   *Cty.,* 137 S. Ct. 1773, 1783 (2017) (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).

16   Because DiscoverOrg cannot meet its burden of establishing either specific or general

17   jurisdiction over Defendants, dismissal of all Defendants is required.

18      **1.**    **This Court Does Not Have General Jurisdiction Over Defendants**

19       "For an individual, the paradigm forum for the exercise of general jurisdiction is the

20   individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is

21   fairly regarded as at home." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780; *See Daimler AG v.*

22   *Bauman*, 134 S. Ct. 746, 749 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*,

23   564 U.S. 915, 919 (2011)) (to be subject to general jurisdiction, a corporation's affiliations with

24   the forum state must be "so constant and pervasive 'as to render [it] essentially at home'" in that

25   state).  As *Daimler* explained, "only a limited set of affiliations with a forum will render a

26   defendant amenable to all-purpose [general] jurisdiction there." *Id*. at 760. With respect to a

DEFENDANT'S MOTION TO DISMISS
(No. 3:17-06008 RBL) –6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

corporation, the "'paradig[m] . . . bases for general jurisdiction'" are its "place of incorporation and principal place of business." *Id*. at 760; *see also BNSF Ry. Co. v. Tyrrell,* 137 S. Ct. 1549, 1552 (2017) ("The 'paradigm' forums in which a corporate defendant is 'at home,' are the corporation's place of incorporation and its principal place of business"). Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable. *Daimler*, 134 S. Ct. at 760; *cf. Hertz Corp. v. Friend,* 559 U.S. 77, 94, 130 S. Ct. 1181 (2010) ("Simple jurisdictional rules. . . promote greater predictability.").

Although the Supreme Court in *Daimler* left open the theoretical "possibility" that "a corporation's operations in a forum other than its formal place of incorporation or principal place of business" could "be so substantial and of such a nature as to render the corporation at home in that State," it emphasized that that would be the "exceptional case." *Daimler*, 134 S. Ct. at 761 n.19.[1]

Here, there is no general jurisdiction as to any Defendant because none have "continuous and systematic" contacts with Washington. Dennis Arndt has lived in Virginia since 2009. Arndt Decl. ¶ 3. William Kapner has lived in Maryland for over 34 years. Kapner Decl. ¶ 3. Neither has ever lived in Washington. Arndt Decl. ¶ 3; Kapner Decl. ¶ 3. Neither have ever owned or leased real or personal property in Washington. Arndt Decl. ¶ 3; Kapner Decl. ¶3. Neither have held any license of any kind or maintained a bank account in Washington. Arndt Decl. ¶ 3; Kapner Decl. ¶ 3. Neither are registered to do business in Washington; they do not have any offices or locations in Washington; they do not have any telephone numbers, listed or unlisted, in Washington; and they do not employ any people in Washington. Arndt Decl. ¶ 3;

---

[1] *See also Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (observing that under *Daimler*, "[i]t is. . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business"); *U.S. ex rel. Imco Gen. Const., Inc. v. Ins. Co. of Pennsylvania*, No. C14-0752RSL, 2014 WL 4364854, at *3 (W.D. Wash. Sept. 3, 2014) ("The Supreme Court [in *Daimler*] has recently made clear that the type of contacts that will make a corporation subject to jurisdiction for all purposes are, for both practical and fairness reasons, generally limited to the place of incorporation and principal place of business.").

DEFENDANT'S MOTION TO DISMISS
(No. 3:17-06008 RBL) –7

137906799.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    Kapner Decl. ¶ 3. Kapner has never worked in Washington and has only visited Washington

2    three times in his entire life—each time for a short vacation. Kapner Decl. ¶ 3. *See Mack v.*

3    *Greenawalt*, No. C09-1711-JCC, 2010 WL 11527170, at *1 (W.D. Wash. Mar. 9, 2010) (finding

4    no continuous and systematic contacts simply because defendant spent Thanksgiving and

5    Christmas in Washington several times); *see also Travelers Cas. & Sur. Co. of Am. v. Telstar*

6    *Const. Co.*, 252 F. Supp. 2d 917, 935 (D. Ariz. 2003) (finding no continuous and systematic

7    contacts even when party owned a vacation home in the jurisdiction); *see also Desantos v.*

8    *Bourland,* No. CIV. 14-00473 ACK, 2015 WL 3439157, at *3 (D. Haw. May 27, 2015) (finding

9    no general jurisdiction when defendant "vacationed in the State of Hawaii three times, and

10   during each vacation she paid for lodging, car rentals, food, and recreational activities, and paid

11   the associated Hawaii state taxes on all of these expenditures."); *see Holt Oil & Gas Corp. v.*

12   *Harvey*, 801 F.2d 773, 779 (5th Cir. 1986) ("Harvey's frequent journeys into Texas for personal

13   and recreational purposes would not by themselves constitute the level of contact which must

14   exist for general jurisdiction to lie.").

15       Arndt's only contact with Washington is that he worked in Washington for DiscoverOrg

16   for approximately 25 non-continuous days, (after DiscoverOrg purchased his Maryland

17   employer, RainKing), and that he entered into a separation agreement with DiscoverOrg—which

18   has its principal place of business in Washington. Arndt Decl. ¶¶ 6-7. Arndt's contacts are

19   insufficient to establish general jurisdiction. *See Hamad v. Gates*, No. C10-591 MJP, 2011 WL

20   2118280, at *3 (W.D. Wash. May 27, 2011), *vacated and remanded on other grounds*, 732 F.3d

21   990 (9th Cir. 2013) (finding "a two month residence in Washington is not enough to demonstrate

22   continuous and systematic contact with the forum state"); *Glob. Verge, Inc. v. Rodgers*, No.

23   2:10-CV-01360, 2011 WL 70611, at *3 (D. Nev. Jan. 7, 2011) ("To extend general jurisdiction

24   against a person whose only contact with a forum is employment by a company incorporated in

25   the forum and an employment related contract with that same company goes beyond reason.");

26   *see also Reich v. Lopez,* 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014), *aff'd*, 858 F.3d 55 (2d Cir.

DEFENDANT'S MOTION TO DISMISS
(No. 3:17-06008 RBL) –8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

2017) (citing *Daimler,* 134 S. Ct. 746) ("Only on truly 'exceptional' occasions may general jurisdiction extend over individuals. . . in a state that is not otherwise their domicile."). Thus, Defendant Arndt and Kapner's contacts fall far short of the "continuous and systematic" threshold required for this Court to assert general jurisdiction.

Similarly, there can be no general jurisdiction over TitanHouse. TitanHouse is neither incorporated nor maintains its principal place of business in Washington. Kapner Decl. ¶ 5. Rather, TitanHouse is a Delaware corporation with its principal place of business in Bethesda, Maryland. *Id*. Moreover, Plaintiff has alleged no facts that could establish that this is "an exceptional case" that would make TitanHouse "at home," and subject to general jurisdiction, in Washington even though it is incorporated and has its principal place of business elsewhere. *Daimler*, 134 S. Ct. at 761 n.19. Indeed, TitanHouse does no business in Washington; it has no offices in Washington, and it has no employees working or residing in Washington. Kapner Decl. ¶ 5. Accordingly, there is no basis for a Washington court to exercise general jurisdiction over TitanHouse.

## 2. This Court Does Not Have Specific Jurisdiction Over Defendants

"For a State to exercise [specific] jurisdiction consistent with due process, the defendant's *suit-related conduct* must create a *substantial connection* with the forum State." *Walden*, 134 S. Ct. at 1121 (emphasis added).[2] The defendant's in-state activities must "'not only [have] been continuous and systematic,'" but must "'also g[i]ve rise to the liabilities sued on.'" *Daimler*, 134 S. Ct. at 754 (quoting *Int'l Shoe Co.*, 326 U.S. at 317); *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007) (to satisfy due process requirements, the plaintiff "must show that he would not have suffered an injury 'but for' [defendant's] forum-related conduct").[3]

---

[2] *Accord Bristol-Myers Squibb*, 2017 WL 2621322, at *7 ("In order for a state to exercise specific jurisdiction, the *suit* must aris[e] out of or relat[e] to the defendant's contacts with the *forum*"); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) ("Specific jurisdiction must rest on the *litigation-specific* conduct of the defendant in the proposed forum state.").

[3] *See also Goodyear*, 564 U.S. at 923 ("[A]s in *International Shoe* itself, jurisdiction unquestionably could be asserted where the corporation's in-state activity is 'continuous and systematic' and *that activity gave rise to the episode-in-suit*."); *Tyrrell*, 2017 WL 2322834, at *3 ("Our precedent … explains that the Fourteenth Amendment's

DEFENDANT'S MOTION TO DISMISS
(No. 3:17-06008 RBL) –9

137906799.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Moreover, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden*, 134 S. Ct. at 1123. "[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him," *id.* at 1122, and "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 1125.

The Ninth Circuit applies a three-part test to determine whether a defendant's contacts with the forum are sufficient to establish specific jurisdiction: (1) the nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable. C*ampanelli v. Image First Unif. Rental Serv., Inc.,* No. 15-CV-04456-PJH, 2016 WL 4729173, at *4 (N.D. Cal. Sept. 12, 2016); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden to satisfy the first two prongs of the test, after which the burden shifts to the defendant to make a compelling case that the exercise of jurisdiction would be constitutionally unreasonable. *Id*.

The first requirement is satisfied if the defendant has either (1) "purposefully availed" itself of the privilege of conducting activities in the forum, or (2) "purposefully directed" its activities toward the forum. *Campanelli,* 2016 WL 4729173, at *4.

The second requirement for specific jurisdiction is that the contacts constituting purposeful availment must be the ones that give rise to the current suit. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1088 (9th Cir. 2000). This requirement is measured in

Due Process Clause does not permit a State to hale an out-of-state corporation before its courts when the corporation is not 'at home' in the State and the episode-in-suit occurred elsewhere").

DEFENDANT'S MOTION TO DISMISS
(No. 3:17-06008 RBL) –10

137906799.4

1    terms of "but for" causation. *Id.* (citing *Ziegler v. Indian River County*, 64 F.3d 470, 474 (9th

2    Cir. 1995)).

3          The third and final requirement for specific jurisdiction is reasonableness. For jurisdiction

4    to be reasonable, it must comport with fair play and substantial justice. *Id.* (citing *Burger King*

5    *Corp.*, 471 U.S. at 476).

6          Here, the Defendants did not direct their actions at or avail themselves of Washington

7    and the claims are not sufficiently related to forum activity. For this reason alone, the motion

8    should be granted.  But if the Court were to find otherwise, the action should still be dismissed

9    because the exercise of jurisdiction would not "comport with fair play and substantial justice"

10   and would not be reasonable.

11          **a.    Defendants Have Not Purposefully Availed Themselves of the**
                **Privilege of Conducting Activities in the Forum**

12

13         The first requirement of specific jurisdiction is satisfied if the defendant has either (1)

14   "purposefully availed" itself of the privilege of conducting activities in the forum, or (2)

15   "purposefully directed" its activities toward the forum.  *Campanelli,* 2016 WL 4729173, at *4.

16   The purposeful availment analysis applies to contract claims and purposeful direction applies to

17   tort claims. *See Schwarzenegger,* 374 F.3d at 802.  "To have purposefully availed itself of the

18   privilege of doing business in the forum, a defendant must have performed some type of

19   affirmative conduct which allows or promotes the transaction of business within the forum

20   state." *Boschetto v. Hansing,* 539 F.3d 1011, 1016 (9th Cir. 2008).  A showing of purposeful

21   direction, on the other hand, consists of evidence that the "defendant's actions outside the forum

22   state [were] directed at the forum."  *Schwarzenegger,* 374 F.3d at 802.  Under either analysis,

23   Plaintiff cannot show purposeful availment and its claims should be dismissed.

24          **(i)    Defendants Have not Purposefully Directed Conduct at the**
                 **Forum**

25         With respect to Plaintiff's misappropriation claims, to establish the purposeful availment

26   element of the personal jurisdiction analysis, DiscoverOrg must establish "purposeful direction."

DEFENDANT'S MOTION TO DISMISS
(No. 3:17-06008 RBL) –11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  Purposeful direction is analyzed under the three-part *Calder* effects test. *Schwarzenegger,* 374

2  F.3d at 804 (citing *Calder v. Jones,* 465 U.S. 783 (1984)). *Calder* "requires that the defendant

3  allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3)

4  causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (quoting

5  *Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1111 (9th Cir. 2002)). However, "mere injury to a

6  forum resident is not a sufficient connection to the forum." *Walden*, 134 S. Ct. at 1125 ("The

7  proper question is not where the plaintiff experienced a particular injury or effect but whether the

8  defendant's conduct connects him to the forum in a meaningful way."); *Drayton Enterprises,*

9  *L.L.C. v. Dunker*, 142 F. Supp. 2d 1177, 1185 (D.N.D. 2001) ("something more than 'mere

10  effects' is required.").

11        Here, plaintiff cannot establish that Defendants' conduct was "expressly aimed" at

12  Washington. "Recent Ninth Circuit cases addressing the 'expressly aimed' prong in the context

13  of intellectual property cases make clear that an allegation of . . . misappropriation with

14  knowledge that the plaintiff resides in the forum is insufficient, on its own, to establish express

15  aiming." *InfoSpan, Inc. v. Emirates NBD Bank PJSC,* No. SACV111062JVSANX, 2012 WL

16  12953464, at *8 (C.D. Cal. July 27, 2012); *see also Schwarzenegger,* 374 F.3d at 807

17  (determining that the fact that defendant may have known that plaintiff lived in the forum was

18  insufficient to show express aiming at the forum). Similarly, "the United States Supreme Court

19  has expressly rejected the idea that a defendant's knowledge of a plaintiff's forum connections

20  and the foreseeability of harm there are enough in themselves to satisfy the minimum contacts

21  analysis." *Microsoft Corp. v. Commc'ns & Data Sys. Consultants, Inc.,* 127 F. Supp. 3d 1107,

22  1115 (W.D. Wash. 2015). Indeed, to meet the "expressly aimed" element the Ninth Circuit has

23  made clear that a plaintiff must show that the defendant misappropriated trade secrets in order to

24  compete with the plaintiff *within the forum. See InfoSpan, Inc,* 2012 WL 12953464, at *8 (C.D.

25  Cal. July 27, 2012); *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129-30 (9th

26  Cir. 2010) (finding defendant "expressly aimed" its conduct at the forum by allegedly willfully

DEFENDANT'S MOTION TO DISMISS
(No. 3:17-06008 RBL) −12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    infringing plaintiff's copyright for purposes of competing with plaintiff *in the forum*); *Love v.*

2    *Associated Newspapers, Ltd.*, 611 F.3d 601, 609 n. 4 (9th Cir. 2010) (interpreting *Brayton*

3    *Purcell* as holding that the 'expressly aimed' prong can be met where a plaintiff alleges that the

4    defendant individually targeted him by misusing his intellectual property on the defendant's

5    website for purposes of competing with plaintiff *in the forum*); *cf. Lang v. Morris*, 823 F. Supp.

6    2d 966, 971 (N.D. Cal. 2011) (collecting Ninth Circuit cases addressing "expressly aimed" prong

7    in intellectual property context).

8        For example, in *InfoSpan, Inc. v. Emirates NBD Bank PJSC,* No. SACV111062JVSANX,

9    2012 WL 12953464, at *8 (C.D. Cal. July 27, 2012, the plaintiff, a California corporation, sued

10   the defendant, a foreign corporation, in California for a variety of claims, including breach of

11   contract and misappropriation of trade secrets. *Id.* at * 2.  The court found that the defendant's

12   "alleged intentional acts were not purposefully directed at California because the bank did not

13   compete in California markets." *Id.* at * 9.  In doing so, the court noted that "contrary to

14   Plaintiffs' assertion, the 'expressly aimed' prong is not satisfied merely by alleging that the Bank

15   knew InfoSpan was a California citizen and that InfoSpan suffered harm in the forum." *Id*.  The

16   court concluded, "[p]lainly, Plaintiffs have not alleged that the Bank misappropriated the

17   SpanCash technology for purposes of competing with Plaintiffs in the California market. Thus,

18   the intentional wrong was not 'expressly aimed' at the forum. Accordingly, Plaintiffs have not

19   met the second prong of the 'effects test.'" *Id*.

20       Here,  like in *InfoSpan*, even if Plaintiff could establish some intentional act causing it

21   harm in Washington, (which it cannot) Defendants' alleged conduct cannot fairly be said to have

22   been "expressly aimed" at Washington.  Defendants are engaged in a start-up business in

23   Maryland and are months away from launch.  Once they do launch, their business model is

24   completely different than DiscoverOrg's and they have no intention of competing with

25   DiscoverOrg's business anywhere at all, let alone in Washington markets.  *See Brayton Purcell*

26   *LLP*, 606 F.3d at 1129; *Love,* 611 F.3d at 609 n. 4.

DEFENDANT'S MOTION TO DISMISS
(No. 3:17-06008 RBL) –13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

In addition to the fact that Defendants are not competing with DiscoverOrg in Washington, Plaintiff can point to no trade secrets that were allegedly learned, stolen, or utilized by Defendants in or from Washington. Dkt. # 1. First and foremost, Defendants deny misappropriating DiscoverOrg's trade secrets. Dkt. # 11; Kapner Decl. ¶ 8; Arndt Decl. ¶ 6. But, even as alleged, any trade secrets allegedly misappropriated were RainKing's trade secrets, not DiscoverOrg's. This is because Kapner never worked at DiscoverOrg and because Arndt worked at RainKing for four years and only spent a few weeks at DiscoverOrg in Washington. Kapner Decl. ¶¶ 4-5; Arndt Decl. ¶¶ 4-6. Indeed, it is undisputed that Kapner and TitanHouse had no knowledge of any DiscoverOrg information, as Kapner sold RainKing two years before it was bought by DiscoverOrg. Arndt Decl. ¶¶ 4-5. And, as to Arndt, all of the information in Arndt's possession was acquired through his four years at RainKing, not the 25 days he spent at DiscoverOrg in Washington. *Id*. ¶ 6. Likewise, to the extent DiscoverOrg tries to base its claim on the work performed by the four contractors, any information the four contractors would have had was RainKing information, (acquired in Maryland—where they worked), not DiscoverOrg information located in Washington. *Id*. ¶ 8. Lastly, any alleged misuse of RainKing's trade secrets—had that occurred— would have occurred in Maryland, where TitanHouse, Kapner, Arndt and the four contractors are all located. *Id*. ¶ 8; Kapner Decl. ¶ 5. No misappropriation occurred, but if it had occurred, the conduct would have been directed at Maryland, not Washington. *See Drayton Enterprises, L.L.C.,* 142 F. Supp. 2d at 1185 (finding no personal jurisdiction when "the only direct connection between this litigation and the defendants' actions is that the injury caused by the alleged tort will be felt in North Dakota; the defendant corporation did not reach into North Dakota to hire the co-defendant; he was living in Minnesota at the time; and the disclosure of trade secrets and breach of contract allegedly occurred in Oklahoma, not North Dakota).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**(ii)    Defendant Arndt Has Not Purposefully Availed Himself of The Forum Based on His Contract with DiscoverOrg**

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto*, 539 F.3d at 1016 (quotations and citation omitted).  An "individual's contract with an out-of-state party alone " cannot "automatically establish sufficient minimum contacts in the other party's home forum." *Burger King*, 471 U.S. at 478 (emphasis in original). This continuing relationship must create a "substantial connection" between the defendant the forum state that is more than merely "random, fortuitous or attenuated."  *Id.* at 479–80.

In cases involving contractual obligations, the Supreme Court emphasizes "the need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King*, 471 U.S. at 479 (quotations and citations omitted).  The court's review of the contractual relationship must be "practical and pragmatic." *Boschetto*, 539 F.3d at 1016.  A court should consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" in determining whether the defendant purposefully established minimum contacts within the forum.  *Burger King*, 471 U.S. at 479.

Here, Plaintiff's entire lawsuit rests on the false notion that Defendant Arndt: 1) solicited DiscoverOrg's employees; 2) stole confidential information and trade secrets; and 3) is using that information to assist TitanHouse in competing with DiscoverOrg.  Dkt. # 1.  The basis for Plaintiff's contract claim is an alleged violation of the confidentiality, non-solicitation, and non-competition provisions contained in *Arndt's RCA*, not his Separation Agreement.  *Id.*  His Separation Agreement simply restates his continuing obligations under the RCA.  *Id.*  Plaintiff's attempt to bootstrap a duplicative breach of contract claim related to Arndt's Separation

DEFENDANT'S MOTION TO DISMISS
(No. 3:17-06008 RBL) –15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

137906799.4

1    Agreement in an attempt to gain specific jurisdiction in this forum is disingenuous.  The relevant

2    agreement at issue Arndt's RCA.

3         With respect to Arndt's RCA, in consideration of the parties "prior negotiations and

4    contemplated future consequences, along with the terms of the contract and the parties' actual

5    course of dealing," it is clear that Arndt's agreement does not establish that he has sufficient

6    minimum contacts within the forum.  Arndt's RCA was negotiated and signed in RainKing's

7    Maryland office.  Arndt Decl. ¶ 5.  His RCA designates Virginia as the agreed-upon forum and

8    governing law.  *Id.*  The provisions at issue in Arndt's RCA are not limited to Washington.  Dkt.

9    # 1, Ex. 1 at 16 (establishing the geographic scope of Arndt's non-compete to be "the United

10   States of America" and any other area where DiscoverOrg has or plans to conduct business).

11        Arndt's only connection to Washington is that DiscoverOrg is headquartered there and he

12   commuted to Washington for about 25 days after DiscoverOrg purchased RainKing.  Arndt Decl.

13   ¶ 6.  DiscoverOrg vaguely alleges that Arndt is using its technology to build TitanHouse's

14   business.  Dkt. # 1.  That is untrue, but if it were true, the only technology Arndt would be able

15   to use would be the technology from the Maryland-based RainKing, where he worked for four

16   years.  Arndt Decl. ¶ 6.  He was only at DiscoverOrg for nine weeks and most of that time was

17   spent running the RainKing operations DiscoverOrg had just acquired.  Likewise, had there been

18   any breach, which there was not, it would have necessarily occurred while Arndt working for

19   TitanHouse in Maryland.  *Id.* ¶ 8.  Similarly, to the extent Plaintiff alleges that the hiring of four

20   contract workers for an 11-day period violates Arndt's agreement, any such violation would have

21   occurred in Maryland, as that is where the contractors live and work.  *Id.*  As such, Arndt does

22   not have sufficient minimum contacts with Washington to establish purposeful availment.  *See*

23   *Fastpath, Inc. v. Arbela Tech. Corp.*, 760 F.3d at 821-24 (holding no personal jurisdiction in

24   breach of noncompete and confidentiality agreement when, among other things, defendant never

25   traveled to the forum for the agreement, learned of the confidential information outside of the

26   forum, allegedly breached the agreement outside of the forum, and the noncompete provisions

DEFENDANT'S MOTION TO DISMISS
(No. 3:17-06008 RBL) –16

137906799.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

did not impose any obligations on defendant specifically in the forum as it "was not so geographically limited," and noting that the fact that the plaintiff corporation was resident of the forum and, thus, felt the breach in the forum was not enough to establish minimum contacts); *see also Drayton Enterprises*, *L.L.C.,* 142 F. Supp. 2d at 1183 (finding no personal jurisdiction in breach of contract claim—when defendant worked for plaintiff in the forum and was entrusted with trade secrets during that time; quit plaintiff's employ and signed a confidentiality agreement upon his exit; and then went to work for a competitor in a different forum and allegedly breached his agreement by revealing trade secrets—because the breach was committed outside the forum and the only connection to the forum was that defendant's actions were felt by plaintiff in the forum); *InfoSpan, Inc.*, 2012 WL 12953464, at *8 (finding no purposeful availment because: 1) the agreement was not negotiated or signed in the forum; 2) the agreement made no reference to the forum; 3) there was no evidence that the defendant performed or executed any portion of the contract in California; and 4) the defendant's "temporary physical presence" in the forum was insufficient.). Defendant Arndt has not purposefully availed himself of the Washington forum based on his contract with DiscoverOrg.

Because Plaintiff cannot establish that Defendants either purposefully availed themselves or purposefully directed their conduct at this forum, the Court need not address the other two prongs. Nonetheless, Defendants will address them succinctly.

### b. Plaintiff's Claims Do Not Arise Out of or Result from Defendants' Forum-Related Activities

The second part of the test for specific personal jurisdiction directs that the court must determine whether DiscoverOrg's claims arise out of or relate to the defendants' forum-related activities. To do so, the Ninth Circuit has adopted a "but for" analysis. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Thus, specific personal jurisdiction is proper only if "but for" Defendants' alleged Washington-related activities, DiscoverOrg's injuries would not have occurred.

DEFENDANT'S MOTION TO DISMISS
(No. 3:17-06008 RBL) –17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    The only Washington-related activities that occurred at all by any defendant are the

2    approximate 25 days Arndt spent working at DiscoverOrg's Vancouver location.  Arndt Decl. ¶

3    6.  Notably, DiscoverOrg does not allege any wrongful conduct by Arendt during this period.

4    Dkt. # 1.  Nor could it.  DiscoverOrg terminated Arndt's employment suddenly and without

5    notice for reasons wholly unrelated to the allegations in this lawsuit.[4]  DiscoverOrg insinuates

6    otherwise—that Arndt was somehow engaged in an ongoing conspiracy to form a completing

7    business—but this is wholly belied by undisputed facts.  Dkts. # 1, 3.  Arndt had no intention of

8    leaving DiscoverOrg and his sudden firing was completely unexpected.  Dkt. # 11.  DiscoverOrg

9    can allege no wrongdoing during this short period where Arndt has some connection to

10   Washington, because there was none.

11       As for TitanHouse and Kapner, they have simply no actions that relate in any way to

12   Washington.  Even if the Court were to find that Arndt was subject to personal jurisdiction,

13   TitanHouse and Kapner are not.

14       Based on the discussion of the claims and Defendants' alleged conduct above, this

15   element is not met.  Defendants' forum-related conduct does not give rise to DiscoverOrg's

16   claims.  Thus, personal jurisdiction over Defendants is improper.

17       **c.    Exercise of Personal Jurisdiction Over Defendants Is Not Reasonable**

18       Finally, any exercise of jurisdiction based on the facts alleged by Plaintiff would be

19   unreasonable and would violate fair play and substantial justice.  Here, Defendants' connections

20   to this forum are simply too tenuous for the Court to assert jurisdiction.  Further, doing so would

21   be unreasonable.  The Ninth Circuit has set forth seven factors for the court to consider in

22   determining whether the exercise of jurisdiction over a nonresident defendant satisfies the

23   reasonableness test: (1) the extent of the defendant's purposeful interjection into the forum state's

24   affairs; (2) the burden on the defendant; (3) conflicts of law between the forum and defendant's

25

26   _____
     [4] Arndt denies any wrongdoing related to his termination and he may seek an appropriate remedy at the appropriate
     time, but regardless, the termination has nothing to do with DiscoverOrg's allegations in this lawsuit.

DEFENDANT'S MOTION TO DISMISS
(No. 3:17-06008 RBL) –18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

home jurisdiction; (4) the forum's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1199–1201 (1988).

Here it is not reasonable to exercise personal jurisdiction over Defendants for the following reasons: (1) as discussed above, Defendants did not purposefully inject themselves into Washington by creating any significant relationship with the forum; (2) litigating in Washington would be burdensome to Kapner and Arndt who live and work in the Washington DC metro area; (3) adjudicating in Washington presents a conflict with the sovereignty of Virginia given that the controlling contract at issue in this case calls for a Virginia forum and Virginia law to apply; (4) Washington has no interest in adjudicating a dispute involving defendants of a different state and regarding alleged conduct that occurred in a different state; (5) the most efficient resolution of this case is in Virginia as that is where the evidence and witnesses are located (TitanHouse, Kapner, Arndt and the four contractors all reside in the Washington DC metro area);[5] (6) Plaintiff cannot get effective relief in Washington because this Court does not have personal jurisdiction over Defendants[6] and because the four contractor witnesses are not subject to the subpoena power of this Court; and (7) the Eastern District of Virginia at Alexandria is the appropriate forum. Indeed, weighing these seven considerations, on balance, favors a finding of no personal jurisdiction.

**B.      This District is Not an Appropriate Venue**

Defendants also requests that Plaintiff's Complaint be dismissed for lack of venue under Federal Rule of Civil Procedure 12(b)(3). Pursuant to the general venue statute, a civil action may be brought in:

---

[5] The focus of this factor is on the location of the evidence and the witnesses. *Menken*, 503 F .3d at 1060–61.
[6] This factor focuses on the convenience and effectiveness of relief for the plaintiff and is not of paramount importance in the Ninth Circuit. *Id* at 1061.

DEFENDANT'S MOTION TO DISMISS
(No. 3:17-06008 RBL) –19

137906799.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)–(3). For purposes of the venue statute, a natural person shall be deemed to be a resident in the judicial district in which that person is domiciled. *Id.* § 1391(c)(1). Corporate defendants reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2).

Dovetailing with the facts above regarding jurisdiction, venue is inappropriate under 28 U.S.C. § 1391(b) because Defendants do not reside in Washington (thus failing the requirements of 28 U.S.C. § 1391(b)(1)) and because the acts giving rise to the various claims set forth by Plaintiff did not occur in Washington (thus failing the requirements of 28 U.S.C. § 1391(b)(2)). Venue is improper in the Western District of Washington and this case must be dismissed under Fed. R. Civ. P. 12(b)(3).

## C.    Motion to Transfer

Finally, Defendants move that this case be transferred to the Eastern District of Virginia at Alexandria, pursuant to 28 U.S.C. § 1404(a). If a case is brought in a federal district court where venue is improper, that court must either dismiss the case, or, if in the interest of justice, transfer the case to a proper venue. 28 U.S.C. § 1406(a). Even when a case is brought in a proper venue, a court may nonetheless transfer the case to any other proper venue for the convenience of parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). While similar to the doctrine of forum non conveniens this

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

statute gives more discretion to a district judge in determining whether to transfer a case. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 253, 102 S. Ct. 252 (1981).

Courts applying § 1404(a) must decide on a case by case basis whether to transfer. *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S. Ct. 2239 (1988). A court must weigh multiple factors when considering a motion to transfer. *Ahead, LLC v. KASC, Inc.,* No. C13-0187JLR, 2013 WL 1747765, at *9 (W.D. Wash. Apr. 23, 2013) (citing *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498 (9th Cir. 2000)). The weight accorded to each factor varies with the facts of each case and is left to the discretion of the court. *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986). Factors to consider may include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, (8) the ease of access to sources of proof, and (9) the public policy considerations of the forum state.

*Ahead, LLC,* 2013 WL 1747765, at *9.

### 1. The location where the agreement was negotiated and executed

This factor favors transfer because the RCA was negotiated and executed in Maryland.

### 2. The state most familiar with the governing law

This factor supports transfer because the RCA provides that it is governed by Virginia law, and the courts in Virginia are more familiar with the application of Virginia law.

### 3. Plaintiff's choice of forum

This factor does not support transfer because Washington is Plaintiff's choice of forum. Yet, this factor alone is insufficient to keep this case in Washington in light of the other factors which weigh in favor of transfer. *Glaxo Grp. Ltd. v. Genentech, Inc.,* No. C 10-00675 JSW, 2010 WL 1445666, at *4 (N.D. Cal. Apr. 12, 2010).

DEFENDANT'S MOTION TO DISMISS
(No. 3:17-06008 RBL) –21

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

### 4. The respective parties' contacts with the forum

This factor supports transfer because Defendants do not even have the minimum jurisdictional contacts with Washington to establish jurisdiction. And even if Defendants do have the minimum contacts necessary to confer jurisdiction, their direct contacts with Washington are exceedingly limited. None of the Defendants live in Washington; they do not do business in Washington, they do not own property in Washington, and none of the actions that underlie Plaintiff's claims were conducted in Washington. In contrast, Plaintiff has an office and employees in Maryland and conducts business in Maryland. Further, Arndt's RCA selected Maryland as the proper forum. Thus, Plaintiff has more substantial contacts in Maryland that Defendants have in Washington, and this factor supports transfer.

### 5. The contacts relating to Plaintiff's cause of action in the forum

This factor favors transfer. The only contacts relating to Washington are that Plaintiff is a Washington resident and Defendant Arndt traveled to Washington for 25 days before his termination. The RCA was negotiated and signed in Maryland. The employee who Arndt allegedly solicited live and work in Maryland. Any trade secrets Arndt allegedly stole were acquired in Maryland. Their allegedly improper use would also be in Maryland, since TitanHouse is a Maryland resident. Any violation of Arndt's noncompete has occurred in Maryland. Thus, there are exceedingly more significant contacts relating to Plaintiff's cause of action in Maryland than in Washington.

### 6. The difference in cost of litigation

The cost to Defendants of defending a case in Washington is greater than the cost to Plaintiff of pressing the in Maryland. Kapner and Arndt have family obligations that preclude them from litigating in Washington. Plaintiff, on the other hand, has offices in Maryland. Thus, the burden on Defendants to travel to Washington for court hearings and trial is greater than the burden for Plaintiff to travel to Maryland. Additionally, the relative financial resources of the parties to absorb the costs of litigation is a consideration in a transfer of venue analysis. *See, e.g.,*

---

DEFENDANT'S MOTION TO DISMISS
(No. 3:17-06008 RBL) –22

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

*Jensen v. Simon & Schuster, Inc.,* No. 3:12–cv–00759–PK, 2012 WL 6839713, at *7 (D.Or. Dec. 12, 2012)(comparing the financial resources of an individual plaintiff and a large corporation in evaluating a motion to transfer venue).[7] Here, DiscoverOrg is a multistate corporation with the resources to litigate in Maryland. Plaintiff is more easily able to absorb the costs of litigation than Defendants. Thus, this factor weighs in support of transfer.

**7.    The availability of compulsory process of non-party witnesses**

This factor weighs in favor of transfer because the non-party witnesses, including the four contractors allegedly hired in violation of Arndt's RCA live and work in Maryland.

**8.    The ease of access to sources of proof**

This factor supports transfer because all of the relevant evidence and witnesses relating to Arndt's alleged breach of contract and Defendants' alleged misappropriation of trade secrets are located in Maryland.

**9.    Public policy considerations of the forums**

This factor is neutral because both Washington and Maryland have an interest in adjudicating disputes involving their residents.

## IV.    CONCLUSION

For the foregoing reasons, this Court does not have general or specific personal jurisdiction over Defendants and venue is improper. Accordingly, the Court should dismiss Defendants from this action or transfer venue to the Eastern District of Virginia at Alexandria

---

[7] *Peterson v. Nat'l Sec. Techs., LLC,* No. 12–CV–5025–TOR, 2012 WL 3264952, at *5 (E.D.Wash. Aug. 9, 2012) ("The court agrees that the parties' respective abilities to absorb the costs of litigation in either district is a relevant consideration. Indeed, the interests of justice require that the court consider whether financial constraints on either party could unfairly impact the outcome of the case.") (quotations and citations omitted); *Boateng v. Gen. Dynamics Corp.,* 460 F.Supp.2d 270, 275 (D.Mass.2006) ("[T]he balance of convenience focuses on the comparative financial abilities of the parties and the cost of litigation should be borne by the party in the best position to absorb and spread it.").

DEFENDANT'S MOTION TO DISMISS
(No. 3:17-06008 RBL) –23

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

DATED: December 28, 2017

s/ James Sanders
James Sanders, WSBA No. 24565
JSanders@perkinscoie.com
s/ Emily A. Bushaw
Emily A. Bushaw, WSBA No. 41693
EBushaw@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
Attorneys for Defendants

Attorneys for Defendants
William Kapner, Dennis Arndt, and TitanHouse, Inc.

DEFENDANT'S MOTION TO DISMISS
(No. 3:17-06008 RBL) –24

137906799.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# CERTIFICATE OF SERVICE

I certify that on December 28, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

Darin M. Sands
David W. Howenstine
Kristin Beneski
Lane Powell PC
601 SW Second Avenue, Suite 2100
Portland, OR 97204-3158
Telephone: 503.778.2100
Facsimile: 503.778.2200
Email: sandsd@lanepowell.com
       howenstined@lanepowell.com
       beneskik@lanepowell.com

Attorneys for Plaintiff

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED this 28th day of December, 2017 in Seattle, Washington.

_s/Emily Bushaw_
Emily Bushaw #41693

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000